USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 2 7 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
J.F. and L.V., individually and on behalf of N.F.,                :
                                                                  :
                                        Plaintiffs,               :      12 Civ. 2184 (KBF)
                                                                  :
                        -v-                                       :
                                                                  :      MEMORANDUM
NEW YORK CITY DEPARTMENT OF                                       :      DECISION & ORDER
EDUCATION,                                                        :
                                                                  :
                                        Defendant.                :
                                                                  :
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Plaintiffs-appellants J.F. and L.V. bring this action, individually and on

behalf of their minor child N.F., pursuant to the Individuals with Disabilities

Education Act, 20 U.S.C. §§ 1400-1482 ("IDEA").  Plaintiffs seek review of a

November 25, 2011, administrative decision of a State Review Officer ("SRO") that

denied N.F. tuition reimbursement for the 2010-2011 school year.  The SRO

reversed a September 15, 2011, decision by an Impartial Hearing Officer ("IHO")

that had awarded N.F. tuition reimbursement.

Plaintiffs have moved for summary judgment, seeking an order reversing the

SRO's decision and reinstating the IHO's award.  Defendant has cross-moved for

summary judgment, seeking an order upholding the SRO's decision and dismissing

plaintiffs' complaint.  A motion for summary judgment in an IDEA case is "in

substance an appeal from an administrative determination, not a summary

judgment [motion]." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012).

1

The motion triggers review of "a state's compliance with the procedures set forth in [the] IDEA" and whether the challenged individualized education program ("IEP") is "reasonably calculated to enable the child to receive educational benefits." Id. at 225-26. "[B]asing its decision on the preponderance of the evidence, [the court] shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The review is substantive and considers more than whether a material fact is disputed.

For the reasons set forth below, the Court GRANTS in part and DENIES in part plaintiffs' motion for summary judgment and GRANTS in part and DENIES in part defendant's motion for summary judgment.

## I.   BACKGROUND

N.F. is an eight-year-old student classified with a speech or language impairment. His deficits are language-based, not behavior-based, and his eligibility under IDEA is not in dispute. (See Def.'s Rule 56.1 Statement ¶¶ 6-7, ECF No. 13.) He "exhibits weaknesses in expressive, receptive, and pragmatic language skills" as well as difficulties with distractibility and maintaining attention. (Id.)

N.F. was born in 2004 and was diagnosed with a speech-related disability when he was a year old. (Pls.' Rule 56.1 Statement ¶¶ 7-8, ECF No. 10.) He received special education services at home until age three, at which point attended a special education preschool through the 2008-2009 school year. In anticipation of the 2009-2010 school year, a committee on special education ("CSE") convened to consider N.F.'s case, and ultimately approved a non-public school placement. (Def.'s

Rule 56.1 Statement ¶ 9, ECF No. 13.) N.F.'s parents thereafter placed him in Aaron School, a private school not pre-approved for disability education by the State Education Department. (Hr'g Officer's Corrected Decision ("Hr'g Officer's Decision") 3, Sept. 15, 2011.) The DOE reimbursed N.F.'s tuition for the 2009-2010 school year at Aaron School, a school that educates children who have average or better cognitive ability but have challenges in the areas of language, attention, and focusing. (Pls.' Rule 56.1 Statement ¶ 23, ECF No. 10.) N.F.'s 2009-2010 primary class contained eight students, and he participated in smaller sections for some subjects. (IHO Tr. 362-65, Apr. 7, 2011.)

Progress reports indicated N.F.'s positive development at the Aaron School. February and May 2010 reports reflected progress across the board. (IHO Ex. 6.) Written reviews indicated social growth and progress in each academic subject, and letter grades likewise showed progress. (Id.) Though N.F.'s ability to maintain focus was frequently cited as a challenge, he showed improvement in that area, too. (IHO Ex. 6.13.)

N.F.'s parents re-enrolled him in the Aaron School for the 2010-2011 school year and made an $8,000 non-refundable deposit in January 2010. (IHO Ex. F.) In mid-May, plaintiffs were notified that the CSE was scheduled to construct N.F.'s IEP during a meeting on June 9, 2010. (IHO Ex. 3, 6, 8, 18.)

The CSE met on June 9, 2010, and was composed of N.F.'s parents; Ms. Ye, a special education teacher and the district representative; Rose Fochetta, the district school psychologist; Carmen Garcia, a parent member; and Sharah Chustz by

3

telephone, N.F.'s special education teacher from the Aaron School.  (IHO Ex. 3-4.)
In developing N.F.'s IEP, the CSE relied on a number of reports and progress
indicators concerning N.F., including:

- a May 2010 Aaron School Spring Report on overall performance,

- a May 2010 Aaron School Speech and Language Progress Report,

- a May 2010 Aaron School Occupational Therapy Progress Report,

- a May 2010 Classroom Observation of the Student conducted by Ms. Ye,

- a February 2010 Aaron School Mid-Year Report on N.F.'s overall performance,

- a June 2009 occupational therapy evaluation,

- an April 2009 social history,

- a February 2009 neurodevelopmental pediatric report,

- a January 2009 educational progress report,

- a January 2009 speech-language progress report,

- a January 2009 related services progress report, and

- a December 2009 psychological evaluation.

(IHO Tr. 15-17, 50-51, Apr. 7, 2011; IHO Ex. 6-16.)  The parties agree that the CSE
relied heavily on the progress reports from the Aaron School (IHO Tr. 15-18, 249,
Apr. 7, 2011; IHO Ex. 4), but they dispute how thoroughly it reviewed the other
documents.  The CSE did not conduct any new evaluations prior to the meeting.

The CSE classified N.F. as "speech or language impaired" and drafted an IEP containing management needs, goals, and related services to be provided. (IHO Ex. 3.) The IEP mandated speech and language therapy and suggested placement in a special class in a community school with a 12:1+1 student to teacher ratio.[1] (IHO Ex. 3 at 13.) The CSE minutes reflected parental concern "regarding peer grouping of 12:1[+]1," referring less to size but rather to the varying needs and abilities of students in the classroom. (IHO Ex. 4; IHO Tr. 215, Apr. 7, 2011.) The IEP called for continued occupational therapy but did not include academic goals, because the CSE determined that N.F. was functioning at grade level. (IHO Ex. 3.)

On August 10, 2010, the DOE notified plaintiffs of N.F.'s specific classroom placement offer in a 12:1+1 special class at P.S. 198, a community school. (IHO Ex. 5.) Plaintiffs were concerned with the CSE's proposed placement primarily because the students were varied in age and functional limitations. (IHO Tr. 223-24, Apr. 7, 2011; IHO Ex. 17.) They made repeated efforts to learn about and visit the classroom but were unable to visit until the school opened on September 13, 2010. (IHO Tr. 218-19, Apr. 7, 2011.) On August 20, plaintiffs wrote a letter to Ms. Funke of the DOE expressing their concerns. (Id. at 215.) By September 3, 2010, having received no reply, they continued to meet the Aaron School tuition deadlines and paid an additional $12,558 for N.F.'s 2010-2011 enrollment. (IHO Ex. E.)

---

[1] A 12:1+1 classroom setting is one in which there are twelve students, one teacher, and one paraprofessional aid.

On January 27, 2011, plaintiffs sought tuition reimbursement from the state by filing a due process complaint before an IHO.[2] (IHO Ex. 1.) They alleged that the DOE had failed to provide N.F. a free appropriate public education (a "FAPE") because, inter alia, the CSE lacked a general education teacher, the CSE did not rely on current or sufficient evaluative data, and the specific classroom's makeup was substantively inappropriate to meet N.F.'s needs. (IHO Ex. 1-7.) The IHO found that (1) the CSE was properly composed; (2) the DOE should have conducted a full psychological evaluation of N.F. prior to recommending a change to his program; and (3) the CSE should have provided transition support services to ease N.F.'s transition to a less restrictive program. (Hr'g Officer's Decision at 13.) He also found that the Aaron School was an appropriate placement and that the equities favor tuition reimbursement for the parents. (Id. at 13-14.)

On September 27, 2011, the DOE appealed the IHO's decision to the SRO. Plaintiffs did not make any cross-appeals, arguing that they lacked the right to cross-appeal from a non-adverse decision. (SRO Pleadings, Verified Answer at 17 ¶ 4.) They did, however, express a desire to reserve the right to raise issues in any subsequent appeal. (Id.)

The SRO conducted an extensive review of the record. Among other things, he reviewed N.F.'s numerous evaluations, detailing their results in over eight single-spaced pages. The SRO concluded that the information before the CSE was sufficient to form an IEP, and he specifically overturned the IHO's finding that the

---

[2] The IDEA established "due process hearings" as procedural safeguards with respect to the provision of a FAPE in 20 U.S.C.A. § 1415.

CSE needed to conduct a new, comprehensive psychological review before completing an IEP. (SRO Decision 17, Nov. 25, 2011.) He also held that a 12:1+1 special placement classroom in a community school was reasonably calculated to enable N.F. to receive educational benefits and that the DOE offered N.F. a FAPE for the 2010-2011 school year. (Id. at 19.) He did not reach any determination regarding the appropriateness of the assigned school, presumably because of the parents' failure to cross-appeal that issue.

## II.       Legal Framework

The IDEA requires states receiving federal funds to provide all children with disabilities in the state a FAPE "that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); see also id. § 1412(a)(1)(A). A FAPE must "be reasonably calculated to enable the child to receive educational benefits." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998)).

The state's DOE must develop an IEP for each disabled child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." Honig v. Doe, 484 U.S. 305, 311 (1988); see also 20 U.S.C. § 1414(d)(1)(A). An IEP is adequate under the IDEA if it is "likely to produce

progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 254 (2d Cir. 2009) (quotation marks omitted). An IEP is not required to "furnish every special service necessary to maximize each handicapped child's potential." Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003) (quotations omitted). In New York, CSEs are responsible for creating a student's IEP. The CSE must include the student's parents, a regular or special education teacher, a school board representative, and others. N.Y. Educ. Law § 4402(1)(b)(1)(a).

The IDEA "authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 247 (2009); see also Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005). Parents may be reimbursed by challenging an IEP's sufficiency at an impartial due process hearing before an IHO. At the hearing, the DOE must show that the educational program recommended by the IEP was appropriate to meet the child's needs. M.H., 685 F.3d at 245 (citing N.Y. Educ. Law § 4404(1)(c)). If the DOE does not meet its burden, the parents are eligible for tuition reimbursement if they show that the alternative placement was appropriate, and that equitable factors weigh in favor of reimbursement. See Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363-64 (2d Cir. 2006); W.M. v. Lakeland Cent. Sch. Dist., 783 F. Supp. 2d 497, 500-01 (S.D.N.Y. 2011).

8

Judicial review under the IDEA follows a three-part analysis: "First, the court asks whether the State complied with the procedures set forth in the [IDEA]. Second, the court asks whether the IEP developed through the [IDEA]'s procedures is reasonably calculated to enable the child to receive educational benefits. If an IEP is deficient — either procedurally or substantively — the court then asks whether the private schooling obtained by the parents for the child is appropriate to the child's needs." M.H., 685 F.3d at 245. At the third part of the analysis, the court considers "equitable considerations relating to the reasonableness of the action taken by the parents." Id.

First, not every procedural error will render an IEP legally inadequate. Id. Rather, relief is warranted only if the alleged procedural inadequacies "(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

To be procedurally sound, an IEP must also contain: "(1) the student's present levels of academic achievement and functional performance; (2) measurable annual goals for the student; (3) the method used to measure the student's progress toward those goals; (4) the special education and related services that the IEP recommends; (5) an explanation of the extent to which the student will be educated with "nondisabled" peers; (6) the reasons for any alternative assessments; and (7) the start date for recommended services, their duration, and their frequency."

M.H., 685 F.3d at 245 (citing 20 U.S.C. § 1414(d)(1)(A); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(2)).

Second, when reviewing substantive compliance, the IDEA provides only for a "basic floor of opportunity . . . consist[ing] of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201 (1982) (internal quotation marks omitted). An IEP is appropriate if it "is likely to produce progress, not regression" and provides an opportunity for more than mere "trivial advancement." Walczak, 142 F.3d at 130 (internal quotation marks omitted). The IDEA only guarantees "an appropriate education, not one that provides everything that might be thought desirable by loving parents." Id. at 132 (internal quotation marks omitted).

The Court only conducts the third step of the analysis if it finds that the state has failed to provide a FAPE at step one or two.

### III.    Standard of Review

When an IHO and SRO reach conflicting conclusions, as here, the Court generally defers to the SRO. R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2012). The amount of deference "depends on the quality of that opinion." Id.

Reviewing courts independently review the administrative record and make determinations based on a preponderance of the evidence. M.H., 685 F.3d at 240. Because the judiciary lacks expertise in educational policy, courts will not

10

"substitute their own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206.

Courts may not "make subjective credibility assessment[s]" or "ch[oose] between the views of conflicting experts on . . . controversial issue[s] of educational policy . . . in direct contradiction of the opinions of state administrative officers who ha[ve] heard the same evidence." Grim, 346 F.3d at 383. More deference is warranted when reviewing "the substantive adequacy of an IEP," the adequacy of an educational methodology, and records containing the same evidence that was before the SRO. M.H., 685 F.3d at 240. Less deference is warranted in appeals involving an IEP's procedural validity, objective indications of student progress, and records with new evidence. Id.

## IV.    DISCUSSION

### A.    The SRO Merits Due Deference

Plaintiffs argue that the SRO's opinion merits no deference from this Court. (Pls.' Mem. Summ. J. 7, ECF No. 11.) They note that deference to the SRO's decision depends on its quality, and they contend that the opinion in this case, "while lengthy, is neither careful nor thorough." (Def.'s Mem. Opp'n Summ. J. 2, ECF No. 17.) In support of this argument, plaintiffs cite (1) a mistaken mention of 2009-2010 school year when the 2010-2011 school year was at issue; (2) the SRO's statement that documents were examined during the CSE meeting, when testimony states that they were examined prior to the meeting; and (3) the SRO's purported failure to review the record in its entirety.

11

Plaintiffs' arguments against deferring to the SRO are unavailing. Their first involves a typographical error, and their second involves an insubstantial (alleged) error in the SRO's account of the chronology of the CSE's review. (Pl.'s Mem. Summ. J. 8, ECF No. 11; SRO Decision at 17.) To refuse to defer to the SRO on the basis of such errors would be effectively to eliminate deference to the SRO altogether. The SRO is required to render a carefully considered opinion; not a perfect one. By contrast, plaintiffs' third reason, if correct, would require the Court to deny deference to the SRO. But it is not correct. The SRO thoroughly reviewed N.F.'s academic and psychological history in rendering its decision. (SRO Decision at 2-10.) Accordingly, the SRO's opinion warrants deference.

### B.    Procedural Challenges

The Court considers two arguments that plaintiffs advance to demonstrate that N.F. was denied a FAPE through procedural flaws in the development of his IEP: (1) exclusion of a general education teacher in the IEP meeting, and (2) failure to consider appropriate documentation at the IEP meeting, including a failure to conduct new evaluative testing of N.F. for the IEP meeting.

First, plaintiffs' challenge that the absence of a general education teacher in the IEP meeting denied N.F. a FAPE fails for two independent reasons. To begin with, they failed to cross-appeal the IHO's adverse finding on that issue. The IHO held that no general education teacher was required for the meeting. (Hr'g Officer's Decision at 12-13). In New York, even a successful party under the IHO's ruling must cross-appeal an adverse particular finding to the SRO if she wishes to

preserve its reviewability with the reviewing state or federal court. See N.Y. Comp. Codes R. & Regs. tit. 8, § 279.4(b) ("A respondent who wishes to seek review of an [IHO]'s decision may cross-appeal from all or a portion of the decision by setting forth the cross-appeal in respondent's answer."); see also 20 U.S.C. § 1415(g)(1) (only an aggrieved party may appeal an IHO decision to an SRO); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(1) (same). A particular finding that is not cross-appealed is waived, and the IHO's decision in that particular is final and binding on the parties. 34 C.F.R. § 300.514(a); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5)(v).

Even if they had not waived their right to raise the issue before this Court, however, plaintiffs' first challenge also fails on substantive grounds. The IDEA requires a general education teacher to attend the IEP meeting when a "child is, or may be, participating in the regular education environment." 20 U.S.C. § 1414(d)(1)(B)(ii). Assuming that N.F.'s IEP contemplates a general education environment because N.F. would enjoy lunch and recess with the larger community school population, the alleged procedural error did not render N.F.'s IEP legally inadequate under 20 U.S.C. § 1415(f)(3)(E)(ii). The general education teacher's role is to discuss program modifications and support strategies for school personnel and the student during his time in the regular education environment. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.3(d). Plaintiffs do not provide any evidence of concerns during the IEP meeting that required a general education teacher to resolve. The CSE minutes likewise reflect no such concerns. (See IHO Ex. 4.) Nor

13

is there any reason to believe that a general education teacher was required to advise on lunch and recess modifications or support. Accordingly, the alleged procedural flaw did not impede N.F.'s right to a FAPE or significantly impede the parents' opportunity to participate in the decision-making process under 20 U.S.C. § 1415(f)(3)(E)(ii).

Second, plaintiffs argue that the CSE failed to consider appropriate documentation when developing N.F.'s IEP. Plaintiffs claim that the CSE's documentation was insufficient to develop an IEP, and that the CSE did not have recent enough evaluations on which to base a decision.

When developing an IEP, a CSE is required to "review existing evaluation data on the child, including — (i) evaluations and information provided by the parents of the child; (ii) current classroom-based, local, or State assessments, and classroom-based observations; and (iii) observations by teachers and related services providers." 20 U.S.C. § 1414(c)(1)(A). After reviewing that information, the CSE then determines whether additional data are needed to complete the IEP. 20 U.S.C. § 1414(c)(1)(B). If needed, the CSE should administer an assessment or evaluation. 20 U.S.C. § 1414(c)(2). The CSE is authorized to decide that no further evaluations are needed. 20 U.S.C. § 1414(c)(4). The CSE must then inform the parents of this decision, but it need not conduct a new assessment unless requested to do so by the child's parents. 20 U.S.C. § 1414(c)(4)(A)-(B). In developing the IEP, the CSE must consider "the results of the initial evaluation or most recent evaluation of the child." 20 U.S.C. § 1414(d)(3)(A)(iii).

14

The CSE was provided with a lengthy record of N.F.'s academic history and progress. In addition to multiple Aaron School reports, the CSE had speech, language, occupational therapy, and social history reports. They also reviewed classroom observations and numerous other reports from 2008 and 2009. The SRO reasonably found that "the information that was before the June 2010 CSE was sufficiently comprehensive to identify and address all of the student's special education and related services needs." (SRO Decision at 19). Although the IHO found a more contemporary, full psychological evaluation of N.F. necessary, the SRO disagreed. This Court finds no reversible procedural error. The CSE had before it a wealth of detailed records regarding N.F.'s progress, and it considered sufficient evidence to satisfy 20 U.S.C. § 1414.

### C.    Substantive Challenges

Plaintiffs also contend that N.F. was denied a FAPE because his IEP was not reasonably calculated to enable him to receive educational benefits. First, they argue that a 12:1+1 student to teacher ratio was not calculated to produce progress, thus constituting an insufficient IEP. Second, they claim that the specific classroom placement and peer group constituted denial of a FAPE.

Plaintiffs' first argument — that the record did not support finding a 12:1+1 student to teacher ratio appropriate for N.F — must fail. This Court "reviews the records of all of the prior administrative hearings" and bases its decision on the preponderance of the evidence, mindful that "determinations regarding the substantive adequacy of an IEP should be afforded more weight than

15

determinations concerning whether the IEP was developed according to the proper procedures." M.H., 685 F.3d at 225-26, 244. When "the substantive adequacy of the IEP is challenged, the district court's review is limited to an examination of "'objective evidence' indicating whether the child is likely to make progress or regress under the proposed plan." Id. at 242-43 (quoting Walczak, 142 F.3d at 130).

Plaintiffs argue that N.F. has demonstrated progress at the Aaron School in a class of eight students that sometimes breaks into groups of six, a smaller class than the IEP recommends. (See Def.'s Mem. Opp'n Summ. J. 12, ECF No. 17; Pl.'s Mem. Summ. J. 13, ECF No. 11; IHO Tr. 362-65, Apr. 7, 2011.) They further point to Dr. Salsberg's testimony to support the proposition that a 12:1+1 class was inappropriate. (IHO Tr. 267, Apr. 7, 2011.) Other facts in the records, however, strongly support the SRO's finding that a 12:1+1 classroom is likely to produce progress.[3] The school psychologist testified that a 12:1+1 class was appropriate. (Id. at 20-22, 41-42, Apr. 7, 2011.) N.F.'s parent testified that a 12:1+1 student to teacher ratio was appropriate "in and of itself," and took issue only with the functional level of other students in the proposed classroom. (Id. at 215, 234.) Additionally, Dr. Salsberg's testimony, taken as a whole, indicates that his primary concern about the 12:1+1 community school classroom was not the student to teacher ratio. (Id. at 265-68; 286-88.) Dr. Salsberg testified that 12:1+1 is "the closer ratio to what would be appropriate [for N.F.]," but that the structure and peer

---

[3] Plaintiffs suggest that the SRO improperly reweighed credibility determinations when considering the testimony outlined above. Because there appears to be near unanimous acceptance on the appropriate classroom size for N.F., any reweighing would be immaterial on this point. The testimony critical of N.F.'s proposed placement focused primarily on the community school classroom's peer group makeup.

16

makeup were inappropriate. N.F.'s Aaron School teacher also indicated that a class of 10 to 12 would be appropriate. (Id. at 38; see also id. at 350, 362, 365 (noting N.F.'s progress in a class of eleven students to one teacher).) Because the appropriate student to teacher ratio for a child is partly a matter of educational policy, and because ample evidence supports the SRO's conclusion, the Court will not disturb the SRO's finding that a 12:1+1 classroom setting satisfied the requirements of the IDEA.

Second, plaintiffs argue that the specific P.S. 198 classroom to which N.F. was assigned would not provide an environment reasonably calculated to enable N.F. to receive educational benefits. The IHO did not reach the question, and the parents did not cross-appeal the issue to the SRO. The SRO did not consider the issue either, presumably because the parents did "not cross-appeal from any matters not decided in their favor." (SRO Decision at 13.) The DOE argues that the parents' failure to cross-appeal precludes this Court from granting them any relief on that basis. This Court disagrees.

Whether a party to an IDEA appeal has waived its right to pursue an issue before a federal district court turns on a constellation of federal and state statutes and regulations. The IDEA requires parties to exhaust their administrative remedies before appealing any state decision to this Court. 20 U.S.C. § 1415(l); Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002). That statute converts a party's procedural rights into procedural requirements.

The Court thus looks to the scope of a party's right to appeal IHO decisions to determine whether that party's failure to appeal constitutes a default. The right of a party to appeal is a matter of both federal and state law. Federal law requires "any party aggrieved by the findings and decision" of an initial administrative hearing to be able to "appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1). To comply with that requirement, New York allows "[a]ny party aggrieved by the findings of fact and the decisions of an impartial hearing officer" to "appeal to a State review officer of the State Education Department." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(1). New York also permits any "respondent who wishes to seek review of an [IHO]'s decision" to "cross-appeal from all or a portion of the decision by setting forth the cross-appeal in [the] respondent's answer." N.Y. Comp. Codes R. & Regs. tit. 8, § 279.4(b).

These statutes and regulations permit (and thus require) parties to appeal only to the extent that they are aggrieved. But courts have construed the term aggrieved liberally. See Parochial Bus Sys., Inc. v. Bd. of Educ. of City of N.Y., 60 N.Y.2d 539, 544 (N.Y. 1983). For example, unlike litigants in federal court, parties contesting the validity of an IEP may cross-appeal an IHO's adverse particular findings even if they obtained all of their requested relief. See N.Y. Comp. Codes R. & Regs. tit. 8, § 279.4(b); (SRO Decision at 13 n.3 (collecting cases)). SROs have gone even further, permitting parties to cross-appeal issues that were never reached by an IHO in the first instance.[4] Application of a Student With a Disability, Appeal

---

[4] The SROs that have permitted (or required) such appeals have pointed to the limited ability of a petitioner (the party appealing from an IHO decision) to respond to new claims raised by a respondent. See Application of the Bd.

No. 12-078; <u>Application of the [redacted]</u>, Appeal No. 11-080; <u>see also</u> <u>C.F. ex rel.</u> <u>R.F. v. N.Y.C. Dep't of Educ.</u>, 11 Civ. 00157, 2011 WL 5130101, at \*12 (S.D.N.Y. Oct. 28, 2011).

Despite non-binding authority permitting the cross-appeal of an IHO's failure to decide an issue, this Court declines to adopt such a reading. Whether a party may (or must) cross-appeal depends on whether it is "aggrieved" by "all or a portion of the decision." N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200.5(k)(1), 279.4(b). The parties do not cite to (and this Court has not found) any legislative history or binding interpretations of the relevant statutes or regulations suggesting this language should not be given its ordinary meaning. The ordinary meaning of "aggrieved" implies harm, not merely failure to help. <u>See</u> <u>Oxford English Dictionary</u> (3d ed. 2012) (defining aggrieved as "[i]njured in respect of one's rights, relations, or position; injuriously affected by someone's action, wronged; having a grievance"); <u>see also</u> <u>Black's Law Dictionary</u> (9th ed. 2009) (similar). In many cases (and in this case), an IHO's failure to decide an issue <u>for or against</u> a party does not "aggrieve" that party in the ordinary sense of that word. Moreover, the phrase "all or a portion of the decision" implies that cross-appeals lie only from issues decided, not merely from silence. The Court therefore finds that a party's failure to cross-appeal an issue never reached by the IHO does not necessarily constitute a waiver of its right to pursue that issue.

---

<u>of Educ.</u>, Appeal No. 11-050; <u>see also</u> N.Y. Comp. Codes R. & Regs. tit. 8, § 279.6. While this procedural limitation does inhibit the SRO's ability to consider matters that a respondent fails to cross-appeal, it does not require the SRO to deny relief altogether. The SRO still retains the ability to remand matters to the IHO. <u>See, e.g.</u>, <u>Application of a Student With a Disability</u>, Appeal No. 11-053; <u>See</u> <u>Application of a Child With a Disability</u>, Appeal No. 95-047.

Here, the IHO made no adverse particular findings with respect to N.F.'s classroom placement, and the issue did not need to be reached to grant plaintiffs their full requested relief. The Court recognizes that situations may exist where a failure to decide an issue aggrieves a party. For example, a failure to decide an interim request can effectively constitute a denial of relief. The present case does not present such a situation. Therefore, in this case, plaintiffs have not waived their right to challenge the adequacy of N.F.'s proposed classroom placement.[5]

Nevertheless, the adequacy of N.F.'s proposed classroom placement involves important questions of state educational policy and requires educational expertise to resolve. It is a question this Court is ill-equipped to decide in the first instance. As neither the IHO nor the SRO has reached that issue, this Court remands that question to the IHO.

Finally, because the Court has not found that the state denied N.F. a FAPE, it need not address whether the Aaron School was an appropriate placement or with whom the equities lie.

V.    CONCLUSION

In light of the foregoing, the Court GRANTS plaintiffs' motion for summary judgment to the extent it seeks to preserve their right to challenge N.F.'s specific classroom placement and otherwise DENIES that motion. The Court DENIES defendant's motion for summary judgment to the extent it seeks a determination that N.F.'s proposed classroom placement cannot serve as a basis for tuition

---

[5] As discussed above, the Court notes that it is common practice to permit parties to cross-appeal issues not reached by an IHO. While that practice does not necessarily conform to the plain language of the statute, the this Court need not and does not decide whether it would is reversible error to permit such an appeal.

reimbursement under the IDEA and GRANTS that motion to the extent it claims that plaintiffs' other procedural and substantive challenges to N.F.'s IEP must fail. The Court also REMANDS this matter to the IHO for proceedings not inconsistent with this opinion.

The Clerk of the Court is directed to terminate the motions at Docket Numbers 9 and 12, and to close this case.

SO ORDERED

Dated:      New York, New York
            November 27, 2012

KATHERINE B. FORREST
United States District Judge