USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: APR 24 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.F. and L.V., individually and on behalf of N.F.,

Plaintiffs,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

12 Civ. 2184 (KBF)

MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge:

On November 27, 2012, this Court granted in part and denied in part both plaintiffs' and defendant's motions for summary judgment and remanded this action to the Impartial Hearing Officer ("IHO") to make an initial finding whether N.F.'s proposed placement classroom violated the IDEA and entitled plaintiffs to tuition reimbursement. (See Mem. Decision & Order, ECF No. 24.) On December 18, 2012, defendant moved for partial reconsideration, and the motion became fully briefed on January 14, 2013. (See Mot. Reconsideration, ECF No. 26; Reply Mem. Supp. Mot. Reconsideration, ECF No. 29.) For the reasons set forth below, that motion is DENIED. The Court assumes familiarity with the legal and factual background of this case.

Defendant moved for reconsideration on two grounds: First, it argued that remand on the issue of classroom placement would be futile in light of the Second Circuit's decision in R.E. v. New York City Department of Education, 694 F.3d 167

(2d Cir. 2012), which limited the use of retrospective testimony in challenges to Individualized Education Plans ("IEPs") under the IDEA. Second, it argued that, even if remand would be futile, it is inappropriate because plaintiffs waived their right to pursue that issue by failing to raise it in a cross-appeal to the State Review Officer ("SRO"). Defendant's second point is mere reargument of the issues presented and decided on summary judgment. It is therefore not a basis for reconsideration, and the Court declines to discuss it further.

By contrast, defendant's first argument merits additional explanation. That argument turns on the scope of two related holdings from the Second Circuit's R.E. decision. First, R.E. held that school districts may not rehabilitate a deficient IEP "after the fact through testimony regarding services that do not appear in the IEP." Id. at 185. Second, R.E. held that, because a challenge under the IDEA "must focus on the written plan," courts may not award tuition reimbursement based on the parents' mere "[s]peculation that the school district will not adhere to the IEP." Id. at 195. On that reasoning, the Second Circuit affirmed both the district court's and the SRO's decisions that appellants' classroom placement did not constitute the denial of a FAPE.

These related holdings, which curtail the ability of courts to consider testimony from after the creation of the IEP, were made against a context in which courts routinely considered challenges to the classroom placement of a student — even though that placement was not made until after the IEP was developed. See, e.g., E.A.M. v. N.Y.C. Dep't of Educ., No. 11 Civ. 3730, 2012 WL 4571794, at *10-11

(S.D.N.Y. Sept. 29, 2012); W.T. v. Bd. of Educ., 716 F. Supp. 2d 270, 290-92 (S.D.N.Y. 2010); see also T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 420 (2d Cir. 2009) ("We emphasize that we are not holding that school districts have carte blanche to assign a child to a school that cannot satisfy the IEP's requirements.").

The question, then, is which prospective challenges to classroom placement are so "speculative" (or so unrelated to the written plan) that they are foreclosed under R.E.? While it is possible to read R.E.'s holding broadly enough to exclude all prospective challenges to a student's classroom placement, the Court declines to do so absent more explicit instruction from the Second Circuit. Cf. B.R. ex rel. K.O. v. N.Y.C. Dep't of Educ., No. 11 Civ. 8433, 2012 WL 6691046, at *4-7 (S.D.N.Y. Dec. 26, 2012) (finding for parents in prospective challenge to classroom placement notwithstanding R.E.). Instead, the Court reads R.E. to hold that evidence of historical imperfection in a school's implementation of other students' IEPs is too speculative a basis to challenge the ability of a school to implement the IEP of a student who has never attended that school. The Court also reads the logic of R.E. to preclude parents from citing evidence about the proposed classroom placement that would not have been available at the time of filing the due process complaint. The Court's reasons for declining to adopt defendant's reading of R.E. are threefold.

First, the reasoning behind R.E.'s focus on prospective evaluation of the IEP is to prevent parties from gaming the system: either through a "bait and switch" on the part of a school district, see id. at 186, or through sandbagging on the part of parents, see id. at 187 & n.4. Here, any remand would be to address issues that

plaintiffs raised in their due process complaint and of which defendant was aware when deciding whether to remedy the IEP or offer an alternative placement. See id. at 187; 20 U.S.C. § 1415(f)(1)(B); (see also IHO Ex. 1, at 6-7, ECF No. 21 (plaintiffs' due process complaint)). There is therefore no risk that allowing plaintiffs to challenge N.F.'s placement classroom would permit them to game the system. Moreover, while the R.E. contemplates that the IEP is the centerpiece of the enforcement of the IDEA, see R.E., 694 F.3d at 188, courts have not historically required the IEP to contain detailed information about the placement classroom. See, e.g., T.Y., 584 F.3d at 420 (failure to name a specific school in an IEP does not, standing alone, constitute a violation of the IDEA); S.F. v. N.Y.C. Dep't of Educ., No. 11 Civ. 870, 2011 WL 5419847, at *12 (S.D.N.Y. Nov. 9, 2011) (school district's delay in notifying parents of classroom placement does not violate IDEA where the department still has time to do so before the beginning of the school year). Accordingly, if parents or students hope to challenge one of the many aspects of the placement classroom too detailed to be included in the IEP, courts must allow them to look beyond the four corners of the IEP.

Second, and relatedly, New York State regulations implementing the IDEA clearly constrain a school district's choice of placement classroom. In particular, New York requires its school districts to place students with disabilities in classes with peers of "similar individual needs" including "(i) levels of academic or educational achievement and learning characteristics; (ii) levels of social development; (iii) levels of physical development; and (iv) the management needs of

the students in the classroom." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)-(3); see also id. § 200.6(h)(5) (requiring the age range of special classes with students under sixteen years of age not to exceed thirty six months). Because, IEPs often do not contain information regarding a student's peer group at the proposed placement, an IEP could be written and implemented flawlessly (or adequately), but nonetheless require a cognitively advanced thirteen-year-old with a physical disability to be educated with developmentally delayed ten-year-old peers of vastly different cognitive and social abilities. To permit parents to bring a challenge in such a situation, the courts would either need to (1) require school districts to include details about the proposed placement classroom in the IEP, which may be logistically impossible, or (2) permit parents to challenge a placement classroom on the basis of information not available at the time of the IEP. Absent a more explicit statement from the Second Circuit, the Court declines to adopt a reading of R.E. that would either substantially alter a school district's obligations in developing an IEP or preclude parents from enforcing New York's regulations regarding placement classrooms.

Third, defendants challenge the Court's November Order on the basis that remand would be futile — not simply that a preponderance of evidence supports their position. In other words, unlike every case that they cite, where the district court, the Second Circuit, or both defer to the decision of a state decision-maker, here, neither the IHO nor the SRO passed on the issue in the first instance. Instead, defendant argues that the IHO and SRO could not rule in favor of plaintiffs

in a manner that this Court would be able to uphold. In R.E., for example, the Second Circuit affirmed the district court (which in turn deferred to the SRO) in holding that a challenge to the proposed classroom placement was merely speculative. See R.E., 694 F.3d at 195; see also Reyes v. N.Y.C. Dep't of Educ., No. 12 Civ. 2113, 2012 WL 6136493, at *7 (S.D.N.Y. Dec. 11, 2012) (affirming SRO finding on classroom placement); F.L. v. N.Y.C. Dep't of Educ., No. 11 Civ. 5131, 2012 WL 4891748, at *13-18 (S.D.N.Y. Oct. 16, 2012) (same); Ganje v. Depew Union Free Sch. Dist., No. 11 Civ. 665, 2012 WL 5473491, at *14-15 (W.D.N.Y. Sept. 26, 2012) (Report and Recommendation) (same). While the IHO and SRO may come to the same conclusion here — in which case plaintiffs' claims would likely fail — there is also evidence in the record that would allow the IHO and SRO to conclude that there were serious, nonspeculative problems with the placement classroom, which would deny N.F. a free and appropriate public education ("FAPE"). (See, e.g., IHO Tr. 219-224, ECF No. 21.) The Court's November decision merely recognized that these issues (for example, of which peers are appropriate classmates for a student) involve core questions of educational policy and educational expertise, which the IHO and SRO are much better positioned to answer than a federal court.

For the reasons set forth above, defendant's motion for reconsideration is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 26 and to terminate this case.

SO ORDERED.

Dated: New York, New York
April 24, 2013

K. B. Forrest

KATHERINE B. FORREST
United States District Judge